564 A.2d 983

**COMMONWEALTH of Pennsylvania**

**v.**

**Tyrone JONES, Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 1989.

Filed Oct. 2, 1989.

Leonard N. Sosnov, Asst. Public Defender, Philadelphia, for appellant.

Norman Gross, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, McEWEN, OLSZEWSKI, TAMILIA, POPOVICH, JOHNSON and MELINSON, JJ.

ROWLEY, Judge:

This is an appeal by Tyrone Jones from the judgment of sentence following his conviction in absentia for robbery as a felony of the second degree[1] and criminal conspiracy.[2] Appellant presents seven issues for our review and asks that his conviction and sentence be reversed and his case be remanded for a new trial or, in the alternative, that his sentence be vacated and his case remanded for resentencing. However, we find that appellant has forfeited his right to appellate review because he was a fugitive. We are, therefore, unable to address the merits of the issues he raises and must quash his appeal.

A brief recitation of the procedural history is in order as background to our discussion of the applicable principle of law. Appellant was arrested on January 27, 1984, in Philadelphia, and charged with the mugging of Mr. James Wat-

1. 18 Pa.C.S.A. § 3701(a)(1)(iv).
2. 18 Pa.C.S.A. § 903.

son, from whom it was alleged the appellant had taken two hundred and sixty-seven dollars, all but seven of which was in brand new currency. Soon after his arrest, and while he was confined alone in a police van in the yard of a nearby police station, the appellant was identified by Mr. Watson as the assailant. Appellant's request for an identification line-up prior to his preliminary hearing was denied on February 2, 1984. His preliminary hearing was held that same day, and Mr. Watson again identified the appellant as his attacker. Appellant then moved to suppress any testimony regarding the confiscation or condition of four ten-dollar bills which he was carrying when he was arrested, as well as the police yard one-on-one confrontation and the preliminary hearing identifications. His suppression motion was denied on January 31, 1985. Appellant also filed a motion in limine to suppress any testimony about the currency found in his possession. This motion was denied on February 1, 1985.

Selection of the jury for appellant's trial was started, but not completed, on February 1, 1985, a Friday. Appellant, who was free on bail was present throughout Friday's proceedings. When appellant's trial resumed on Monday, February 4, 1985, however, appellant was absent. A bench warrant for his arrest was issued that day. Appellant was not immediately apprehended and the trial court, pursuant to Pa.R.Crim.P. 1117(a), continued with the trial. Appellant was tried and convicted in absentia.[3] Timely post-verdict motions were filed by appellant's counsel. The trial court denied the motions. Appellant, still not having been apprehended, was sentenced on June 10, 1985, in absentia. A motion to modify sentence was filed by appellant's counsel and denied by the trial court. This timely direct appeal was taken and is now before us for decision. Appellant has been represented throughout these proceedings by counsel who has vigorously asserted appellant's rights at every stage of the case.

3. Appellant remained at large until his arrest in Maryland on February 2, 1987.

Appellant now claims that his constitutional, statutory and procedural rights were violated during his trial.[4] However, before we can consider the merits of appellant's arguments, we must determine whether he has forfeited his right to appellate review.

■ The trial court correctly denied appellant's post-trial motions because appellant, at the time, was a fugitive. *Commonwealth v. Albert*, 260 Pa.Super. 20, 393 A.2d 991 (1978). The question is whether we have discretion to hear appellant's appeal which was filed while he was a fugitive, now that he has been returned to custody in Pennsylvania and is amenable to any order that may be entered.

In *Commonwealth v. Galloway*, 460 Pa. 309, 333 A.2d 741 (1975), our Supreme Court permitted an appeal by a criminal defendant who had been a fugitive, but was later recaptured. Galloway had been convicted of murder in the second degree. Post-trial motions, which included a reservation that he be allowed to file additional supplemental reasons after the notes of testimony were transcribed, were timely filed. Before argument was held on the motions, however, Galloway escaped from the Lancaster County Prison and became a fugitive from justice. The Commonwealth petitioned the trial court to dismiss Galloway's post-trial motions and the trial court granted the petition, dismissing Galloway's motions with prejudice. Galloway was later apprehended, and sentenced to a term of ten to twenty years imprisonment. Following sentence, Galloway filed "Additional and Supplemental Motions for a New Trial, Nunc Pro Tunc", which the trial court allowed, by order, to be filed and dismissed them the same day on the basis that Galloway had been a fugitive.

---

**4.** Among his arguments, appellant claims that he should be awarded a new trial because the prosecutor, in his closing remarks, violated appellant's right to remain silent by commenting on appellant's absence and resulting silence; because the one-on-one station yard identification violated his right to counsel and was unduly suggestive; because he was improperly denied a lineup identification before his preliminary hearing; and because the trial court failed to give any remedy to compensate for the Commonwealth's loss of its only piece of corroborating evidence, the currency.

A direct appeal was filed by Galloway to the Supreme Court and the case was listed for argument. When the case was called, the Court was informed that Galloway had again escaped from custody and was once again a fugitive. The district attorney petitioned the Court to dismiss Galloway's appeal with prejudice. The Court took no action on the petition and continued the argument generally until Galloway was returned to custody. Three months later the Court was advised that Galloway had been returned to custody, a new argument date was scheduled, and oral argument was heard on both the merits of Galloway's appeal and the petition to dismiss.

The Supreme Court denied the Commonwealth's petition, to quash the appeal, reasoning that the rationale behind dismissal of an appeal while a convicted defendant is a fugitive from justice rests upon "the inherent discretion of any court to refuse to hear the claim of a litigant who, by escaping, has placed himself beyond the jurisdiction and control of the court, and hence, might not be responsive to the judgment of the court." *Id.*, 460 Pa. at 311–312, 333 A.2d at 743. Because Galloway was in custody and no longer a fugitive when the case was actually argued, the Court held, he was subject to the jurisdiction of the Court and would be responsive to any judgment the Court would enter. Accordingly, the Court held that there was no basis upon which to dismiss Galloway's appeal. The Court then remanded the case to the trial court for disposition of Galloway's supplemental post-trial motions, which were filed after his return to custody, on the merits to allow the trial court the first opportunity to correct any errors that may have occurred and to aid in clarifying the issues on appeal.

Following the Supreme Court's decision in *Galloway*, this court has been consistent in its view that a trial court can dismiss post-verdict motions which are pending and not yet decided when the defendant escapes or absconds from the jurisdiction; and that this Court has the discretion to hear an appeal, properly filed in the convicted defendant's absence, so long as the criminal defendant has returned to the

jurisdiction before the appeal is dismissed. *See e.g., Commonwealth v. Milligan,* 307 Pa.Super. 129, 452 A.2d 1072 (1982); *Commonwealth v. Harrison,* 289 Pa.Super. 126, 432 A.2d 1083 (1981); *Commonwealth v. Albert,* 260 Pa.Super. 20, 393 A.2d 991 (1978); *Commonwealth v. Borden,* 256 Pa.Super. 125, 389 A.2d 633 (1978); *Commonwealth v. Boyd,* 244 Pa.Super. 98, 366 A.2d 934 (1976); *Commonwealth v. Barron,* 237 Pa.Super. 369, 352 A.2d 84 (1975).

More recently, however, the Supreme Court has decided two cases, *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988); and *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984). Based upon our review of these two decisions, we conclude that *Galloway* is no longer controlling and that we have no discretion to consider an appeal by a convicted defendant who escapes or absconds from the jurisdiction, regardless of when he returns.

In *Passaro,* the defendant was retried and convicted following his successful post-conviction challenge to a guilty plea. Passaro was sentenced to a term of five to ten years imprisonment. A timely notice of appeal was filed in the Superior Court and briefs were filed on his behalf. Before argument was scheduled on the appeal, Passaro escaped from prison. Six months later, the Commonwealth filed a motion to quash the appeal, which was granted by the Superior Court. Passaro was subsequently found and returned to Pennsylvania, at which time he filed a petition to reinstate his appeal, which the Superior Court denied. He then filed a similar petition in the Supreme Court.

In denying Passaro's petition, the Supreme Court recognized that the right of appeal is guaranteed by Article 5, Section 9 of the Pennsylvania Constitution, but that the right is conditioned upon compliance with the procedures established by the Court, and that "a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision." *Id.,* 504 Pa. at 614, 476 A.2d at 348. The Court also recognized the rationale for dismissing an appeal of a convicted defendant while

he is a fugitive from justice, as explained in *Galloway,* but then went on to say:

"More fundamentally, however, a defendant's resort to escape constitutes a flagrant and deliberate bypass of the entire judicial process. The escape of a convicted defendant from confinement may properly be considered a rejection of the legitimate means afforded the defendant for challenging his conviction and imprisonment. Thus, by choosing to flee and live as a fugitive, a defendant *forfeits* the right to have his claims considered."

*Id.,* 504 Pa. at 615–616, 476 A.2d at 349 (emphasis supplied). Justice Zappala, in a concurring opinion, characterizes the majority's conclusion as follows:

"I write separately to express my strong disagreement with the majority's characterization of a defendant who has become a fugitive as having forfeited his constitutional right to have his claim considered. The mere fact of escape should in no way act to divest a person of *any* of his constitutional rights...."

*Id.,* 504 Pa. at 617, 476 A.2d at 349 (emphasis in the original).

Despite this apparent shift in emphasis, the factual distinctions between *Galloway* and *Passaro* would still suggest that the forfeiture analysis of *Passaro* would not apply to situations like the instant case, where the defendant was returned to Pennsylvania authorities while their appeals were still pending. The Supreme Court's subsequent decision in *Luckenbaugh,* however, belies this conclusion.

The defendant in *Luckenbaugh* entered a guilty plea to one count of robbery. He was sentenced to two to four years incarceration. Following sentencing, Luckenbaugh filed a motion for reconsideration. While that motion was pending, Luckenbaugh escaped. The trial court, sua sponte, dismissed the motion for reconsideration on the ground that Luckenbaugh had forfeited his right to have his claim reviewed. A notice of appeal was timely filed on

Luckenbaugh's behalf. Before the Superior Court,[5] the Commonwealth argued that Luckenbaugh had waived his right to appellate review because he had escaped from custody. This Court stated that although the trial court had properly dismissed Luckenbaugh's motion for reconsideration, it had discretion to permit review of the claims on appeal when an appellant has returned to the jurisdiction. Furthermore, the Court recognized that certain claims, such as competence to stand trial and a challenge to the legality of sentence cannot be waived. The opinion is unclear as to when Luckenbaugh was returned to Pennsylvania, but it is reasonable to conclude that he was in the custody of Pennsylvania authorities when the Superior Court made its ruling, because the Court addressed the merits of Luckenbaugh's appeal, vacated the sentence, and remanded for resentencing.

In his dissent, Judge Olszewski argued that by escaping from prison during the pendency of his petition for reconsideration, Luckenbaugh forfeited his right to challenge his sentence. He agreed with the majority that a challenge to an illegal sentence cannot be waived, but recognized that the "waiver which our Courts have excused in challenging sentence is the failure, whether through intent or neglect, to preserve the issue for appellate review." *Luckenbaugh*, 356 Pa.Super. at 359, 514 A.2d at 898. This rule, Judge Olszewski wrote, was inapplicable to Luckenbaugh because he forfeited his right to have his petition heard when he escaped. "Consequently, since appellant has jeopardized his right to challenge the legality of his sentence by electing to escape from custody during the pendency of his petition, I would affirm the lower court's decision to dismiss the petition." *Id.*, 356 Pa.Super. at 360, 514 A.2d at 898.

The Commonwealth appealed the Superior Court's ruling and the Supreme Court reversed in a per curiam one line order:

5. *Commonwealth v. Luckenbaugh*, 356 Pa.Super. 355, 514 A.2d 896 (1986).

"Order of the Superior Court reversed. *See Common-wealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984)."
*Luckenbaugh*, 520 Pa. 75, 550 A.2d 1317 (1988). The Court's reference to *Passaro*, despite the apparent factual distinctions between *Passaro* and *Luckenbaugh*, suggests that the Court in *Luckenbaugh* was relying upon its reasoning in *Passaro*. This conclusion is supported by reviewing Justice Zappala's dissent in *Luckenbaugh*. Justice Zappala viewed the issue in the case as whether the Superior Court has discretion to entertain an escaped defendant's appeal after he has been returned to the jurisdiction. The majority, he noted, reversed the Superior Court's decision without addressing the issue which was not presented in *Passaro:* whether a court has the authority, i.e., the discretion, to reinstate an appeal once the defendant is returned to the jurisdiction. Justice Zappala concluded that:

"[The] decision in *Passaro* neither deprives a tribunal of such authority nor dictates such a result. Consistent with this Court's prior decision in *Commonwealth v. Galloway, supra,* which was cited in *Passaro,* I would hold that the lower courts have the inherent discretion to refuse to hear the appeal of a fugitive and the discretion to reinstate such an appeal. The Superior Court properly exercised its discretion to reinstate the appeal in this matter and no abuse of that discretion is indicated."

*Luckenbaugh*, 520 Pa. at 78, 550 A.2d at 1319. Six members of the Court, however, voted to reverse the Superior Court's order on the basis of *Passaro*. We can only conclude, therefore, that the Court's statement in *Passaro*, that "a defendant who elects to escape from custody forfeits his right to appellate review", meant that we are without discretion to reinstate a defendant's appeal once he has escaped and the trial court has dismissed his post-trial motions.

As an intermediate appellate court, we are bound by the decisions of our Supreme Court. The Court's decision in *Luckenbaugh* is no less binding upon us because it was presented per curiam. As the Supreme Court recently

emphasized, "our *per curiam* affirmance constituted a binding decision of precedential authority on the question presented to and accepted for review by this Court." *Commonwealth v. Gretz,* 520 Pa. 324, 325, 554 A.2d 19, 20 (1989). Because we can find no legally significant distinctions between the facts in *Luckenbaugh* and those here, we are constrained to conclude that we are without any discretion and do not have the authority to consider this appeal on its merits. In the words of our Supreme Court, appellant's escape " 'disentitles [him] to call upon the resources of the Court for determination of his claims.' " *Passaro, supra,* 504 Pa. at 616, 476 A.2d at 349, quoting *Molinaro v. New Jersey,* 369 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586, 588 (1970).

Moreover, we note that although quashing appellant's direct appeal may be viewed as a drastic sanction, such a step is not without justification. When an appellant voluntarily absents himself from our jurisdiction, he creates the possibility that, should he be entitled to a new trial, the Commonwealth could find it impossible to retry him, due to the failing memories of witnesses or their deaths, misplaced evidence, or other barriers to the necessary procedures. The effect of our Supreme Court's mandate against hearing appeals by former fugitives is to protect the public's interest in preserving its right to apprehend and bring to justice those who would prey upon the innocent, injuring them or depriving them of their property.

Appellant's appeal is quashed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I am constrained to join with the majority in light of the Pennsylvania Supreme Court decisions in *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988), and *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984), which deny a recaptured fugitive *any* right to appellate review.

32

The Supreme Court in *Passaro* stated that, "[A] defendant who elects to escape from custody forfeits his right to appellate review. It would be unseemly to permit a defendant who has rejected the appellate process in favor of escape to resume his appeal merely because his escape proved unsuccessful." *Id.*, 504 Pa. at 616, 476 A.2d at 349.

Such a position relative to a recaptured fugitive can be unduly harsh. While we are aware that escape from official detention is something that must be discouraged in the strongest terms, there are escape statutes that cover this situation. *See* 18 Pa.C.S. § 5121(a),(d)(1)(i). Escape of a convicted defendant is a third-degree felony, and depending on a defendant's prior record score, carries a possible penalty of eight-to-eighty months imprisonment. *Id.*, 42 Pa.C.S. § 9721.

Our Supreme Court recognized in *Passaro* that the right of appeal is guaranteed by Article 5, Section 9 of the Pennsylvania Constitution, and that the past decisions of that court have emphasized that this right is a personal one which may be relinquished only through a knowing, voluntary, and intelligent waiver. However, the *Passaro* court found that the failure to comply with the procedures for appeal, established by the Supreme Court, would result in a waiver of the right to appeal; escape from detention would be considered a failure to comply with the procedures established for appeal.

While we do not disagree with the reasoning utilized by the Supreme Court in *Passaro*, we believe that an across-the-board prohibition against *any* appeals is overly restrictive. A better holding would be to allow for exceptions in certain circumstances, such as competency to stand trial, an illegal sentence, an involuntary guilty plea, or an illegal arrest. Certainly to avoid injustice or the extreme harshness of an illegal sentence, these should be capable of consideration for review by an appellate court. Our court did recognize, in *Commonwealth v. Luckenbaugh*, 356 Pa. Super. 355, 514 A.2d 896 (1986), reversed at 520 Pa. 75, 550 A.2d 1317 (1988), before it was appealed to the Supreme

Court, at footnote 1, that certain claims, such as competency to stand trial and a challenge to the legality of a sentence, could not be waived. I therefore believe that this approach would better serve the ends of justice, and avoid the fundamental unfairness that could inure to a defendant, albeit one who escaped and was recaptured, who was given an illegal sentence or who was incompetent to stand trial in the first place.