656 A.2d 1355

**In the Interest of J.J.**

**Appeal of J.J., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1994.

Decided April 18, 1995.

John W. Packel, Sarah Kerr, Michael C. Schwartz, Ellen T. Greenlee, Philadelphia, for J.J.

Catherine Marshall, Ronald Eisenberg, George S. Leone, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

ZAPPALA, Justice.

The issue presented is whether an appellate court has the discretion to entertain an appeal of a juvenile who became a fugitive during the appellate process but returned to the jurisdiction of the juvenile court prior to disposition of the appeal. We hold that an appellate court has the inherent authority to entertain an appeal of a fugitive who has returned to custody during the pendency of an appeal. An appellate

court likewise has discretion to reinstate a timely filed appeal that was dismissed by that court during his fugitive status.

On March 13, 1992, the Appellant was adjudicated delinquent for possession with intent to deliver controlled substances and committed to a juvenile facility, St. Gabriel's Hall. The Appellant filed an appeal to the Superior Court on April 13, 1992. While the appeal was pending, the Appellant fled from St. Gabriel's Hall. He was absent without leave from the juvenile facility from July 19, 1992 to August 16, 1992. He was arrested on August 16, 1992 for theft, unauthorized use of an automobile, receiving stolen property, and escape. He was committed to the Glen Mills School on September 4, 1992.

On September 1, 1992, the Commonwealth filed an application to quash the appeal pending before the Superior Court and a motion for extension of time to file a brief. The request for an extension was granted on September 3, 1992, giving the Commonwealth an additional thirty days to file its brief if the application to quash the appeal was denied. The Appellant filed an answer in opposition to the Commonwealth's application to quash the appeal on September 8, 1992. By order dated November 16, 1992, the Superior Court directed the Commonwealth to file a brief on the merits and referred the application to the panel assigned to hear the case. On January 20, 1993, the Superior Court entered a per curiam order granting the Commonwealth's application to quash the appeal.

We granted the Appellant's petition for allowance of appeal to address his claim that the Superior Court erred in quashing the appeal due to his unauthorized absence from the juvenile facility. *Commonwealth v. Galloway*, 460 Pa. 309, 333 A.2d 741 (1975) is the seminal case relating to the effect of a defendant's fugitive status on his right to appeal. In *Galloway*, the appellant was convicted by a jury of murder in the second degree. The appellant escaped from a county prison prior to the date scheduled for argument of his post-trial motions. The trial court entered an order dismissing the appellant's post-trial motions with prejudice. The appellant was apprehended and returned to custody. After sentencing, he filed a supplemental motion for a new trial that was

dismissed by the trial court due to his fugitive status at the time of the filing of the original motions.

The appellant escaped from custody again and was a fugitive on the date that this Court had scheduled argument on his appeal. The district attorney filed a petition requesting that the appeal be dismissed with prejudice. An order was entered continuing the argument until he returned to custody. After the appellant had been returned to custody, argument was heard on the merits of the appeal and the motion to dismiss. The parties were directed to file supplemental briefs on the issue of whether the appeal should be dismissed.

The Commonwealth relied upon the U.S. Supreme Court's decision in *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) as support for dismissal. *Molinaro* was distinguishable, however, because the U.S. Supreme Court had dismissed a case on appeal from a state court when the appellant, who was on bail, failed to surrender himself to state authorities and was considered a fugitive. Unlike *Molinaro,* the appellant in *Galloway* had been returned to custody and was once again subject to the court's jurisdiction.

We concluded that there was no basis upon which to grant the motion to dismiss the appeal at that time because the appellant's return ensured that he would be responsive to the judgment rendered. We stated,

> The rationale behind dismissal of an appeal while a convicted defendant is a fugitive from justice rests upon the inherent discretion of any court to refuse to hear the claim of a litigant who, by escaping, has placed himself beyond the jurisdiction and control of the court and, hence, might not be responsive to the judgment of the court.

460 Pa. at 311–312, 333 A.2d at 743 (citations omitted.) The matter was remanded to the trial court for disposition of the post-trial motions and the supplemental motions on the merits.

The inherent discretion of the appellate courts to refuse to hear the appeal of one who is a fugitive from justice may be exercised upon the filing of a motion of the Commonwealth pursuant to Pa.R.A.P. 1972(6) or sua sponte. See, *Common-*

*wealth v. Tomlinson,* 467 Pa. 22, 354 A.2d 254 (1976) (per curiam order entered dismissing appeal when appellant became and remained a fugitive subsequent to filing and submission of briefs); *In re Dixon,* 282 Pa.Super. 189, 422 A.2d 892 (1980) (submitted appeal dismissed upon information from district attorney and public defender that appellant was a fugitive); *Commonwealth v. Albert,* 260 Pa.Super. 20, 393 A.2d 991 (1978) (per curiam order quashing appeal due to fugitive status of appellant during pendency of the appeal); *Commonwealth v. Barron,* 237 Pa.Super. 369, 352 A.2d 84 (1975) (appeal dismissed upon Commonwealth's request when appellant escaped from state hospital and bench warrant issued and outstanding at time of appeal).

In this case, the Appellant does not challenge the authority of an appellate court to dismiss an appeal when a defendant is a fugitive, or to deny reinstatement of an appeal or post-verdict motions following capture after the appeal has been dismissed because of his fugitive status. The Appellant contends that the Superior Court erred in dismissing his appeal, however, because he was within the jurisdiction of the juvenile court before the motion to quash was filed and prior to the entry of the dismissal order. He asserts that the dismissal of his appeal at a time when he was within the jurisdiction of the courts of this Commonwealth denied him the right to appeal guaranteed by Article 5, § 9 of the Pennsylvania Constitution. The Appellant cites *Galloway* as support for his argument that an appellate court should not dismiss the appeal of a criminal defendant who absconds for some period of time during the pendency of his appeal, but is within the court's jurisdiction at the time of decision. The Commonwealth responds that the recent decisions of this Court in *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984), *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988), and *Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439 (1992), have emasculated *Galloway* and have stripped the appellate courts of their inherent discretionary authority to entertain the appeal of a fugitive who is returned to custody.

In *Passaro*, the issue was whether a defendant upon his return to custody is entitled to reinstatement of an appeal that has been quashed due to his fugitive status. Passaro was convicted by a jury of burglary and criminal conspiracy. Post-verdict motions were denied, and he was sentenced to prison. A timely notice of appeal was filed in Superior Court. Passaro escaped from prison after a brief had been filed on his behalf with the court, but before oral argument was scheduled. Six months later, the Commonwealth filed a motion to quash the appeal. The motion was granted on April 29, 1983. Passaro was arrested in Ohio on August 24, 1983. He waived extradition and was returned to Pennsylvania. He petitioned for reinstatement of his appeal, but his request was denied by the Superior Court. Passaro filed a similar petition with this Court that was treated as a petition for allowance of appeal and granted.

Passaro did not challenge the propriety of the Superior Court's dismissal of his appeal because of his fugitive status, but argued before this Court that his appeal should be reinstated since he had been apprehended and returned to the jurisdiction of the court. We rejected his argument that the mere fact that a defendant has been returned to custody entitles him to resume his appeal. There is a right of appeal guaranteed by Article 5, § 9 of the Pennsylvania Constitution, but there is no guaranteed right to reinstatement of an appeal when a defendant's appeal has been quashed due to his fugitive status.

The constitutional right to appeal is a personal right that may be relinquished only through a knowing, voluntary, and intelligent waiver; however,

the right to appeal is conditioned upon compliance with the procedures established by this Court, and a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision.

*Passaro*, 504 Pa. at 614, 476 A.2d at 348. When a defendant becomes a fugitive, his action "may properly be considered a

rejection of the legitimate means afforded the defendant for challenging his conviction and imprisonment." *Id.* at 615, 476 A.2d at 349.

We acknowledged that dismissal of pending appeals of criminal defendants who are fugitives is an appropriate judicial response to the "flagrant and deliberate bypass of the entire judicial process," *Id.* at 615, 476 A.2d at 349, and is a longstanding principle of American law. Dismissal of an appeal under those circumstances is a practice that has been followed in Pennsylvania and incorporated into our Rules of Appellate Procedure. We reiterated the rationale underlying this practice as expressed in *Galloway* by specific reference to that decision.

"It is within the discretion of the reviewing court to take such an action sua sponte ... or on motion of the Commonwealth." *Passaro,* 504 Pa. at 615, 476 A.2d at 348 (citations omitted). The dismissal of Passaro's appeal due to his fugitive status while the appeal was pending before the Superior Court was within the discretion of that court. Passaro's subsequent return to custody did not compel the Superior Court, as the reviewing court, to reinstate his appeal upon his request. As his apprehension did not "entitle him to rights already forfeited," 504 Pa. at 617, 476 A.2d at 349, the Superior Court's denial of Passaro's petition for reinstatement of his appeal was a proper exercise of its judicial discretion. We were unable to ascertain any logical reason or policy that would support Passaro's claim that he was *entitled* to reinstatement of his appeal and denied his request for relief.

In *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988), we entered a per curiam order which reversed the order of the Superior Court, citing the *Passaro* decision. No opinion was issued, but a dissenting statement filed with the order summarized the facts of the case. Luckenbaugh pled guilty to robbery and was sentenced to serve two to four years imprisonment. A motion for reconsideration was filed by Luckenbaugh challenging the trial court's use of a prior record score. A rule to show cause why the sentence should not be reconsidered and vacated was issued and made returnable on

July 2, 1985.  Luckenbaugh escaped prior to that date.  The trial court sua sponte refused to consider the motion for reconsideration due to his fugitive status and entered an order to that effect on July 2, 1985.  A notice of appeal to the Superior Court was filed on Luckenbaugh's behalf on July 5, 1985.

On appeal, the Superior Court concluded that the trial court had erroneously calculated Luckenbaugh's prior record score under the sentencing guidelines.  The sentence was vacated and the case remanded for resentencing.  The Superior Court briefly addressed the Commonwealth's argument that Luckenbaugh had waived his right to appellate review in a footnote in its opinion:

> Following sentencing, appellant filed a motion for reconsideration.  He then escaped from custody.  As a result, the lower court dismissed his motion, finding that appellant had forfeited any right to have his claims considered.  *See Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984).  This Court, however, may exercise its discretion and permit review of such claims when the appellant has returned to the jurisdiction.

*Commonwealth v. Luckenbaugh,* 356 Pa.Super. 355, 357, fn. 1, 514 A.2d 896, 897, fn. 1 (1986).  The Superior Court elected to consider the merits of Luckenbaugh's sentencing challenge, but recognized that the lower court properly dismissed his motion for reconsideration.[1]

Neither *Passaro* nor *Luckenbaugh* stand for the proposition that a reviewing court lacks the authority to reinstate the appeal of a defendant who has escaped from custody while the appeal is pending.  Our holding in *Passaro* was that a fugitive does not have a constitutional right to reinstatement of his appeal when returned to custody.  We did not establish a per se rule that would deprive an appellate court of its discretion

---

1.  One member of the Superior Court panel dissented from the majority's decision to vacate the sentence and to remand for resentencing on the basis that Luckenbaugh had forfeited his right to challenge his sentence by escaping from custody while his petition for reconsideration was pending, citing *Passaro* as had the majority.

to reinstate an appeal when a defendant returns to custody. The *Passaro* decision did not remove that discretion from an appellate court, and the per curiam order entered in *Luckenbaugh* which cites *Passaro* cannot be interpreted more expansively than the decision itself.

In *Commonwealth v. Maxwell*, 524 Pa. 53, 569 A.2d 328 (1990), we entered a per curiam order dismissing the appeal of a criminal defendant who had escaped from a state correctional institute after his appeal had been argued before this Court, but prior to the entry of the order. The per curiam order stated that, "It being brought to the attention of this Court that, on August 20, 1989, the Appellant escaped from the State Correctional Institution at Huntingdon, the appeal is dismissed," and cited *Passaro*. We denied reargument on February 7, 1990.

Mr. Chief Justice Nix, the author of the majority opinion in *Passaro*, dissented from the per curiam order denying reargument.

I must disagree with the Court's reliance on *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984), as a basis for denying the instant petition for reargument and affirming the dismissal of petitioner's appeal. The rationale of *Passaro* was that a defendant who had abandoned his appeal by escaping from prison and occasioning the quashing of the appeal rendered himself unavailable to the Court's jurisdiction and forfeited his right to a "second" appeal.

\* \* \* \* \* \*

Essential to the rationale established in *Passaro* is that the disruption of the appellate process justifies a conclusion that the constitutional right of appeal was forfeited thereby. In this matter, the appellate process was in no way impacted by the aborted escape. It must be emphasized that our laws provide for specific sanctions for conduct of this nature. 18 Pa.C.S. § 5121. *To apply a concept of forfeiture of the constitutional right to appeal would be in effect an additional judicially-determined sanction imposed as a result of the attempted escape, a sanction which would abrogate a*

*fundamental state constitutional right.* Such an act, in my judgment, is improper.

524 Pa. at 54–55, 569 A.2d at 329 (1990) (emphasis added).

In *Commonwealth v. Jones,* 388 Pa.Super. 22, 564 A.2d 983 (1990), the Superior Court interpreted our decisions in *Passaro* and *Luckenbaugh* as depriving the intermediate appellate court of the discretion to hear a defendant's appeal, which was filed while he was a fugitive, once he returned to custody. Jones was arrested in connection with a mugging incident. Jury selection for his trial began on February 1, 1985, but was not completed on that date. Jones, who was free on bail, was present during the February 1 proceedings, but did not appear when the trial resumed on February 4, 1985. A bench warrant was issued for his arrest. The proceedings continued, and Jones was tried and convicted in absentia. Post-verdict motions filed by his counsel were denied. Jones was sentenced in absentia on June 10, 1985. A motion to modify the sentence was denied by the trial court. A notice of appeal was filed in the Superior Court. Jones was subsequently arrested in Maryland on February 2, 1987.

The Superior Court acknowledged that the trial court had correctly denied the post-verdict motions because Jones was a fugitive at that time, and framed the issue as whether the intermediate appellate court had discretion to hear the appeal that was filed while he was a fugitive since he had been returned to custody in Pennsylvania and was amenable to any order that would be entered. The Superior Court quashed the appeal, reasoning that it was required to do so by this Court's decisions.

Following the Supreme Court's decision in *Galloway,* this court has been consistent in its view that a trial court can dismiss post-verdict motions which are pending and not yet decided when the defendant escapes or absconds from the jurisdiction; and that this Court has the discretion to hear an appeal, properly filed in the convicted defendant's absence, so long as the criminal defendant has returned to the jurisdiction before the appeal is dismissed. *See e.g. Commonwealth v. Milligan,* 307 Pa.Super. 129, 452 A.2d 1072

(1982); *Commonwealth v. Harrison*, 289 Pa.Super. 126, 432 A.2d 1083 (1981); *Commonwealth v. Albert*, 260 Pa.Super. 20, 393 A.2d 991 (1978); *Commonwealth v. Borden*, 256 Pa.Super. 125, 389 A.2d 633 (1978); *Commonwealth v. Boyd*, 244 Pa.Super. 98, 366 A.2d 934 (1976); *Commonwealth v. Barron*, 237 Pa.Super. 369, 352 A.2d 84 (1975). More recently, however, the Supreme Court has decided two cases, *Commonwealth v. Luckenbaugh*, 520 Pa. 75, 550 A.2d 1317 (1988); and *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984). Based upon our review of these two decisions, we conclude that *Galloway* is no longer controlling and that we have no discretion to consider an appeal by a convicted defendant who escapes or absconds from the jurisdiction, regardless of when he returns.

388 Pa.Super. at 27, 564 A.2d at 985.

Jones appealed from the Superior Court's order. The sole issue presented was whether Jones forfeited his right to review when he became a fugitive. A majority of this Court affirmed the order quashing his appeal, holding that

A defendant's voluntary escape acts as a per se forfeiture of his right of appeal, where the defendant is a fugitive at any time after post-trial proceedings commence. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody. Thus, by choosing to flee from justice, appellant forever forfeited his right to appeal.

*Commonwealth v. Jones*, 530 Pa. 536, 541, 610 A.2d 439, 441 (1992).[2] The majority made no reference to this Court's decision in *Galloway*, in which we refused to dismiss an appeal when the appellant had been returned to custody.

*Galloway* was not expressly overruled by the majority, but the analysis in *Jones* arguably suggests that it was overruled sub silentio. This suggestion is belied, however, by our opinion in *Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696

**2.** Only four members of the Court joined the majority opinion. Mr. Chief Justice Nix concurred in the result, and Mr. Justice Cappy wrote a dissenting opinion which was joined by this author.

(1992), which cites *Galloway* and was issued four months after the *Jones* decision.[3]

Chopak was convicted by a jury of recklessly endangering another person and aggravated assault. He remained free on bail pending sentencing. Chopak was scheduled for a psychiatric evaluation as part of the sentencing process, but failed to appear for the evaluation or for the hearing date of his post-verdict motions. The trial court issued a bench warrant for his arrest and dismissed the post-verdict motions.

Chopak was apprehended later and was required to submit to a psychiatric evaluation. He was diagnosed as suffering from a paranoid personality disorder. The trial court sentenced him to a term of imprisonment of one to five years. Chopak filed a motion nunc pro tunc for reconsideration of his right to raise post-verdict motions. As grounds for the motion, he asserted that he was not responsible for his flight because of his mental condition. The trial court denied the motion. The Superior Court reversed, concluding that the trial court abused its discretion. The judgment of sentence was vacated and the matter was remanded to the trial court with directions that the post-verdict motions be reinstated.

On appeal, we addressed whether the Superior Court properly reversed the decision of the trial court denying reconsideration of Chopak's post-verdict motions nunc pro tunc. The Commonwealth argued that the trial court's decision was within its discretion and should not have been reversed absent an abuse of discretion. Chopak did not challenge the initial

---

**3.** The *Chopak* opinion, authored by Mr. Chief Justice Nix, was joined by four other members of the Court, with one member dissenting. Former Justice Larsen, who had authored *Jones*, filed a concurring opinion to express his opinion that *Jones* and *Commonwealth v. Judge*, 530 Pa. 403, 609 A.2d 785 (1992) subsumed *Passaro*. He stated,

In *Jones* we expanded and broadened *Passaro* by unequivocally stating that "a defendant's voluntary escape acts as a per se forfeiture of his right of appeal, where the defendant is a fugitive *at any time after post-trial proceedings commence.*" Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody.

*Chopak*, 532 Pa. at 242, 615 A.2d at 704 (emphasis supplied). None of the members of the Court who joined the majority opinion joined in this concurring opinion.

ruling dismissing the post-verdict motions while he was a fugitive but argued that his fugitive status was attributable to his personality disorder and ought not be a basis for denying his right to appeal. He asserted also that the record did not support the trial court's finding that his mental illness was insufficient to render him not responsible for his flight.

We reversed the order of the Superior Court because the decision to grant or deny a nunc pro tunc post-verdict motion was within the trial court's discretion. We determined that the trial court fully considered Chopak's psychiatric evaluation in denying the request for reconsideration, and did not abuse its discretion. The Superior Court erred in reversing the trial court in the absence of an abuse of discretion.

The Commonwealth asserts that the *Jones* decision compels an appellate court to dismiss an appeal of a defendant who was a fugitive at any stage of the appellate proceedings, regardless of whether the defendant has returned or been returned to custody. It submits that *Jones* is applicable to juveniles as well, citing *In the Interest of Gregory Thomas,* 533 Pa. 572, 626 A.2d 150 (1993) (Opinion Announcing the Judgment of the Court.) In *Thomas,* the appellant was adjudicated delinquent of carrying a firearm without a license and carrying a firearm on public property. He was committed to a juvenile facility. Post-verdict motions were denied by the trial court and an appeal was filed to the Superior Court. Appellant escaped while the appeal was pending. Four months later, the Commonwealth moved to quash the appeal due to his fugitive status. The appellant was arrested on November 25, 1990, on new charges. On December 3, 1990, he filed a motion to dismiss the Commonwealth's motion to quash his appeal because of his return to custody. The Superior Court issued a per curiam order granting the Commonwealth's motion on March 5, 1991.

The issue presented to this Court was whether the appellant, as a juvenile, forfeited his right to appellate review due to his fugitive status. The appellant argued that the appeal of a juvenile should not be dismissed under any circumstances because the law adopts a protective posture with respect to

juveniles, dealing with them as parens patriae. In the Opinion Announcing the Judgment of the Court, it was stated that juveniles have a right of appeal under Article 5, § 9 of the Pennsylvania Constitution and that such appeals are governed by the Rules of Appellate Procedure, rather than The Juvenile Act, 42 Pa.C.S. § 6301 et seq. The opinion went on to state that this Court's holding in *Jones* "extends to juvenile defendants, making a juvenile defendant's voluntary escape a per se, irrevocable forfeiture of his right of appeal, where the juvenile defendant is a fugitive at any time after post-trial proceedings commence." *Thomas,* 533 Pa. at 578, 626 A.2d at 153.

The order of the Superior Court quashing the juvenile's appeal was affirmed by a majority of this Court; however, the opinion filed with the affirmance of the Superior Court's order did not command a majority. Of the six members participating in the decision, two concurred in the result only and one member dissented.

The Appellant argues that dismissal of his appeal without consideration on the merits was unwarranted because he was within the jurisdiction of the court for three months before the order was entered by the Superior Court. He contends that the appellate process was not disrupted by his brief fugitive status, noting that the original briefing schedule for his appeal was not altered as a result of his absence. The Appellant urges us to adopt a less restrictive approach to the per se forfeiture analysis underlying the *Jones* decision, and to restore discretionary authority in the appellate courts to consider an appeal of a defendant who has returned or been returned to custody.[4]

The inherent discretionary authority of an appellate court to consider the merits of or reinstate an appeal filed by a

**4.** The Appellant has argued also that a per se forfeiture rule should not be applied to a juvenile because, unlike an adult, the right to appeal is not explained to the juvenile as part of the adjudicatory process. We need not address this argument because of our holding that an appellate court has the discretion to entertain the appeal of a fugitive once returned to custody.

defendant who once escaped from custody has long been recognized under Pennsylvania law. We agree with the Appellant that an appellate court should retain the discretion to consider and to reinstate an appeal of a fugitive upon his return to custody. We trust that the judicious exercise of this authority will ensure that the functioning of the appellate process will not be impeded and that the dignity of the courts will be guarded. This approach will permit the court to protect the appellate process while considering the interests of a defendant in pursuing his appeal. The exercise of the intermediate appellate court's discretion will be subject to review for an abuse of discretion, as it has been in the past.

We expressly overrule *Jones* to the extent that it removed the authority from our appellate courts to exercise any discretion over appeals when a defendant had been a fugitive at any time during the appellate process. By overruling *Jones,* we insure that an appellate court will be able to exercise the same discretion as a trial court does in deciding what will be the appropriate response to a defendant's fugitive status during a pending appeal before its own court. The analysis in *Commonwealth v. Kindler*, 536 Pa. 228, 639 A.2d 1 (1994) (Opinion Announcing the Judgment of the Court) is persuasive on this point, although the opinion is not precedential.

As a general rule, we have concluded that defendants who are fugitives from justice during the appellate process have no right to any appellate review, even though they have been recaptured and returned to the custody of Pennsylvania. *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984). This rule is applicable to capital cases, and would normally require that we dismiss the various allegations of ineffective assistance of trial counsel, prosecutorial misconduct, and trial court error that a defendant would normally wish to raise on a direct review of a death sentence.

Here, however, Appellant's fugitive status did not take place during the pendency of an appeal before us. Rather, it took place while the trial court was considering Appellant's post-verdict motions and the question becomes whether the trial court has authority to dismiss such motions as a

response to an Appellant's flight. The United States Supreme Court has recently reviewed its own case law which permits its appellate courts to dismiss pending fugitive appeals and has reaffirmed the principle that where there is a connection between a defendant's fugitive status and the appellate process, the sanction of dismissal of the appeal is a reasonable response. *Ortega–Rodriguez v. United States,* 507 U.S. [——], 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

This rule, like our counterpart to it, rests in part on a recognition that one who invokes the jurisdiction of a tribunal and then flees has voluntarily waived or disentitled himself to call upon the resources of the Court for a determination of his claims. *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586, 587–88 (1970); *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984). The Court in *Ortega–Rodriguez* made it clear that the reasoning of *Molinaro* is equally applicable in federal district courts and authorizes the district court to fashion an appropriate response to the contemptuous disrespect manifested by flight, to protect its own dignity.

While *Ortega–Rodriguez* and *Molinaro* are not binding on us, their logic is persuasive and compel us to conclude that our trial courts, when faced with a defendant in fugitive status, also have every right to fashion an appropriate response which can include the dismissal of pending postverdict motions. Our review of that action is limited to determining whether the flight has a connection with the court's ability to dispose the defendant's case and whether the sanction imposed in response to the flight is reasonable under the circumstances.

536 Pa. at 233, 639 A.2d at 2.

In the instant case, the Superior Court entered only a per curiam order dismissing the appeal. Without an opinion, we are unable to determine whether the Superior Court quashed the appeal based upon the *Jones* decision, i.e. because it considered itself bound to do so, or whether it determined that the appeal should be quashed as an exercise of its discretionary authority. The order of the Superior Court is vacated and

the matter is remanded for reconsideration consistent with this decision.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, Senior Justice who is sitting by designation, files a Concurring Opinion in which NIX, C.J., joins.

CASTILLE, J., files a Dissenting Opinion.

MONTEMURO, Senior Justice, concurring.

Less than three years ago in *Commonwealth v. Jones*, 530 Pa. 536, 610 A.2d 439 (1992), we held that:

> "A defendant's voluntary escape acts as a *per se* forfeiture of his right to appeal, where the defendant is a fugitive at any time after post-trial proceedings commence. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody."

*Id.*, 530 Pa. at 540, 610 A.2d at 441.

I agree with the Dissent that the Majority overrules *Jones* "without justification." [1] We have long recognized the importance of the doctrine of *stare decisis.* "Over and over again Stare Decisis has been recognized as the established rule and Law of Pennsylvania." *Commonwealth v. Weinstein*, 442 Pa. 70, 86, 274 A.2d 182, 191 (Bell, C.J., opinion in support of affirmance), *cert. denied*, 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 (1971), *overruled in part on other grounds by Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976).

---

1. The Majority relies on our opinion in *Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696 (1992) to overrule *Jones* in favor of our prior decision in *Commonwealth v. Galloway*, 460 Pa. 309, 333 A.2d 741 (1975). It is true that in *Chopak*, shortly after deciding *Jones*, we cited *Galloway* favorably, without discussion. However, one year later in *In the Interest of Gregory Thomas*, 533 Pa. 572, 626 A.2d 150 (1993), a plurality of this court adopted the holding of *Jones* wholesale and applied it to juveniles. One Justice dissented in *Thomas* based on his dissent in *Jones*. No other Justice joined this dissent revealing that our court recognized that *Jones* was the controlling principle of law. Thus, *Thomas* demonstrates the continuing vitality of *Jones* well after our decision in *Chopak*.

We have stated that *stare decisis* is a "wise course of action." *Fadgen v. Lenkner,* 469 Pa. 272, 282, 365 A.2d 147, 152 (1976). "*[S]tare decisis* is essential if case-by-case judicial decision making is to be reconciled with the principle of the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 786–87, 106 S.Ct. 2169, 2192, 90 L.Ed.2d 779 (1986) (White, J., dissenting), *overruled in part on other grounds by Planned Parenthood v. Casey,* —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

I believe that the Majority Opinion is such an "exercise of judicial will." Three years ago in *Jones* we set forth a *per se* rule of forfeiture of appellate rights where a defendant escapes from custody or fails to appear for post-trial proceedings. Today, the Majority abruptly, and without reason, changes course and reverts to the rule found in *Commonwealth v. Galloway,* 460 Pa. 309, 333 A.2d 741 (1975). Such casual disregard for our prior decisions cheapens the currency of our precedent and threatens the stability of the rule of law in our Commonwealth. Certainly, no compelling reason or change of circumstance for overruling *Jones* in its entirety has been advanced by the Majority. In this instance, I fully agree with Chief Justice Nix when he stated in his dissent in *Frame v. Sutherland,* 459 Pa. 177, 327 A2d 623 (1974) (Nix, J., dissenting) that "flagrant abandonment of 'stare decisis' without the slightest acknowledgement of the departure and absent any attempt to demonstrate its need, cannot be condoned and epitomizes the height of judicial irresponsibility." *Id.* at 191, 327 A.2d at 630.

Despite my belief that our holding in *Jones* should remain intact under the well established principle of *stare decisis,* I concur in the result reached by the Majority. One year ago, in *In the Interest of Gregory Thomas,* 533 Pa. 572, 626 A.2d 150 (1993), a plurality of this Court applied the rule found in *Jones* to juveniles. I did not participate in the consideration

or decision of that case. I now express my disagreement with the reasoning of the Plurality in *Thomas*.

In *Thomas*, the Plurality found that "our holding in *Jones* extends to juvenile defendants, making a juvenile defendant's voluntary escape a *per se*, irrevocable feature of his right of appeal, where the juvenile defendant is a fugitive at any time after post-trial proceedings commence." *Thomas*, 533 Pa. at 578, 626 A.2d at 153. The Plurality reasoned the forfeiture of an appeal should "not turn on whether or not the defendant is a juvenile." *Id*. The Plurality justified the application of *Jones* to juveniles because "[t]hey are increasingly sophisticated and responsible for a substantial number of violent crimes." *Id*.

Despite the increasing sophistication of juveniles, our law distinguishes between juvenile offenders and adult offenders. The late Justice McDermott summarized the differences between juvenile offenders and adult criminal defendants in *Commonwealth v. Davis*, 526 Pa. 428, 586 A.2d 914 (1991) (McDermott, J., opinion in support of reversal):

> Once, however, a juvenile is found delinquent and subject to the jurisdiction of a court, distinctions of purpose prevail. Distinctions founded on the nature of a juvenile and the duties of a state toward one not yet master of their life. Our law does not consider delinquency a crime, we conceive it rather a call and occasion for help. Delinquency is a term that eases and changes the focus of consequences. What for adults would be specific offenses sanctioned by specific penalty, is in delinquency proceedings converted into considerations dedicated to the best interests of the juvenile. Because we accept that youth has its excuses and its promise, we seek to teach, direct, help, and save the young whose troubles bring them to the courts. To do so, we neither hold them or our courts at a disposition hearing to the strictness of law that would prevent or hinder that saving purpose.

*Davis*, 526 Pa. at 438–39, 586 A.2d at 919.

Thus, the purposes of adult and juvenile criminal proceedings are substantially different. In a juvenile proceeding, the

court stands in *parens patriae* in relation to the juvenile, and the focus of the proceeding is dedicated to the best interests of the juvenile. Whereas in a criminal proceeding, the court is concerned with meeting out criminal sanctions. This difference is more than one of academic interest; instead it directly undercuts the rationale for applying *Jones* to juveniles.

In *Jones* we held:

[A] defendant's resort to escape constitutes a flagrant and deliberate bypass of the entire judicial process. The escape of a convicted defendant from confinement may properly be considered a rejection of the legitimate means afforded the defendant for challenging his conviction and imprisonment. Thus, by choosing to flee and live as a fugitive, a defendant forfeits the right to have his claims considered.

*Jones,* 530 Pa. at 540, 610 A.2d at 440 (quoting *Commonwealth v. Passaro,* 504 Pa. 611, 615, 476 A.2d 346, 349 (1984)).

However, in the case of a juvenile offender, an escape will often not be a deliberate rejection of the appellate process. Under Pa.R.Crim.P. 1405(C), adult defendants are required to be notified of their appellate rights. Thus, for an adult, an escape acts as a knowing waiver of his appellate rights. However, our rules of criminal procedure do not apply to juveniles. *See* Pa.R.Crim.P. 1 ("[T]hese rules do not apply to juvenile or domestic relations proceedings"). Thus, juveniles are not required to be advised by the court of their appellate rights. In fact, the Appellant in the instant case was not notified of his appellate rights. (Notes of Testimony 3/13/92, 23–24) Therefore, the Appellant cannot be considered to have knowingly waived his right to appellate review by escaping.

Moreover, my experience on the family courts of this Commonwealth teaches me that the escape of a juvenile offender is most often not meant as "a rejection of the legitimate means afforded the defendant for challenging his conviction." *Jones,* 530 Pa. at 540, 610 A.2d at 440. Instead, the child is frequently motivated by fear and loneliness, rather than thwarting the processes of the court. Often, the child runs away from a juvenile facility and returns home or to other familiar sur-

roundings. Thus, a rule that effects a *per se* forfeiture of an appeal in cases involving juvenile offenders strikes me as unduly harsh.

This is not to say that I believe that juveniles who escape should never face consequences for their actions. Instead, I believe it best to leave the decision to the discretion of the court in cases involving juveniles. I thus would reject the suggestion of the Appellant that the appeal of a juvenile should not be dismissed under any situation. Instead, in cases where the juvenile is an older and more sophisticated offender or has an extensive history of delinquency and contact with the juvenile court and the court believes that an escape was effected to deliberately bypass the appellate process, the court should have the discretion to refuse the appeal.[2] However, where the court believes that the child fled because he was afraid, or homesick, and did not understand the seriousness of his actions, the court should have the discretion to take the appeal.

For these reasons, I concur in the order of the Majority remanding this case to the Superior Court to determine whether the appeal was quashed pursuant to *Jones* or pursuant to its discretionary authority.

NIX, C.J., joins in this Concurring Opinion.

CASTILLE, Justice, dissenting.

I would hold that there is a *per se* forfeiture of appellate rights where a defendant escapes from custody or fails to appear for post-trial proceedings based upon the majority opinion in *Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439 (1992). In *Jones,* this Court unequivocally held that:

A defendant's voluntary escape acts as a *per se* forfeiture of his right of appeal, where the defendant is a fugitive at any time after post-trial proceedings commence. Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody.

2. The Commonwealth, of course, retains the right to petition to transfer the proceedings to adult court pursuant to 42 Pa.C.S. § 6533.

*Id.,* 530 Pa. at 540, 610 A.2d at 441. In the instant case, appellant became a fugitive after post-trial proceedings commenced and was returned to custody approximately one month later only after he was arrested for theft, unauthorized use of an automobile and receiving stolen property. Consequently, under the holding in *Jones,* appellant forever forfeited his right to appellate review.

Notwithstanding *Jones,* the plurality opinion announcing the judgment of the Court contends that *Commonwealth v. Galloway,* 460 Pa. 309, 333 A.2d 741 (1975), is the controlling law. In *Galloway,* this Court maintained that it was within the discretion of the court to dismiss a fugitive's appeal and refuse to hear the claims of one who placed themselves beyond the jurisdiction and control of the court. Thus, in *Galloway,* this Court found that there was no basis to grant the motion to dismiss the appeal because the defendant had been returned to custody, ensuring that he would be responsive to the jurisdiction of the court and to the judgment rendered. However, *Jones sub silentio* overruled *Galloway.*

I believe a defendant's escape or flight from justice after invoking the court's post-trial jurisdiction acts as a *per se* forfeiture of his right of appeal regardless of whether or when he is returned to custody. Here, appellant chose to bypass the appellate process by fleeing the jurisdiction of the court. But for police action, he may never have "returned" during his appeal process. The right to appeal is conditioned upon compliance with the procedures established by this Court and a defendant who deliberately chooses to bypass the orderly procedures for challenging his conviction is bound by the consequences of his decision. *Commonwealth v. Passaro,* 504 Pa. 611, 613, 476 A.2d 346, 347 (1984) (citations omitted).

Accordingly, I would affirm the order of the Superior Court quashing appellant's appeal.