available with respect to claims fully litigated on

IV.

The district court did not reach Sistrunk's prosecutorial misconduct claim that specific statements by the prosecution deprived him of a fair trial. It will have an opportunity to address that claim on remand.

We will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

**Gary Lee DOCTOR, Appellant,**

v.

**Gilbert A. WALTERS, Appellee.**

**No. 95–3484.**

United States Court of Appeals,
Third Circuit.

Argued June 4, 1996.

Decided Sept. 24, 1996.

Sur Petition for Rehearing Nov. 4, 1996.

direct review in such a case.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Shelley Stark (argued), Karen S. Gerlach, Federal Public Defender, Pittsburgh, PA, for Appellant.

Robert E. Colville, District Attorney, Kemal Alexander Mercili, Russel Broman, Thomas N. Farrell, (argued), Assistant District Attorneys, Office of District Attorney, Pittsburgh, PA, for Appellee.

Before: SCIRICA, ROTH, Circuit Judges, and O'NEILL, District Judge. *

## OPINION OF THE COURT

O'NEILL, District Judge:

Petitioner Gary Doctor appeals the dismissal of his petition for a writ of habeas corpus. The court below dismissed the petition because: (1) Doctor failed to exhaust his state remedies; and (2) the Pennsylvania courts refused to consider the merits of his direct appeals based on an independent and adequate state procedural rule. We conclude that Doctor did not exhaust his state remedies and that it would not be futile to require him to raise his unexhausted claims under Pennsylvania's Post Conviction Relief Act. 42

* The Honorable Thomas N. O'Neill, Jr., United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Pa.C.S. §§ 9541–46 (Supp.1996). Accordingly, we will affirm the district court's dismissal of Doctor's petition. Because Doctor may resubmit his petition with only exhausted claims we also address the district court's second basis for dismissing the petition and hold that the fugitive forfeiture rule as applied to Doctor was not an independent and adequate state procedural rule which would bar federal habeas corpus review.

Doctor was charged with aggravated assault in July, 1985.[1] On June 24, 1986, during the lunch recess of his criminal bench trial, and following the presentation of the Commonwealth's case, Doctor fled. Upon Doctor's failure to return, the trial court issued a bench warrant and recessed the proceedings. On August 29, 1986, the trial court entered a guilty verdict against Doctor, apparently without conducting any further proceedings or attempting to inform Doctor, his attorney or the Commonwealth about its intention to enter a verdict.

Doctor remained at large for over five years until he was arrested on January 25, 1992 in Butler County, Pennsylvania. On April 14, 1992, the trial court sentenced Doctor to a term of 49 to 98 months. On June 5, 1992, Doctor filed a *pro se* "Petition for Habeas Corpus" in the Pennsylvania Supreme Court, Appendix 279–284, which was denied on August 21, 1992. While that petition was pending, he filed a timely direct appeal to the Pennsylvania Superior Court. On May 13, 1993, the Superior Court, without reaching the merits of any of his claims, quashed Doctor's appeal pursuant to Pa.R.App.P. 1972(6). This fugitive forfeiture rule allows a Pennsylvania appellate court "to quash" an appeal "because the appellant is a fugitive." The Superior Court then denied Doctor's Application for Reargument. The Pennsylvania Supreme Court denied Doctor's Petition for Allowance of Appeal without opinion on November 29, 1993. Thereafter the United States Supreme Court denied Doctor's petition for a writ of certiorari.

On November 29, 1994, Doctor filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. The district court, adopting the report and recommendation of a magistrate judge, dismissed Doctor's petition without considering its merits. Doctor filed a timely notice of appeal to this Court. On September 19, 1995, the district court granted Doctor's request for a certificate of probable cause to appeal and appointed counsel for him.

■ The district court had jurisdiction over this matter under 28 U.S.C. § 2254. We have jurisdiction under §§ 1291 and 2253. Our review of whether petitioner has exhausted his state remedies is plenary. *Ross v. Petsock*, 868 F.2d 639, 640 (3d Cir. 1989).

### EXHAUSTION

■ Generally, a § 2254 petition which includes any unexhausted claims must be dismissed without prejudice for failure to exhaust all state created remedies. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). To satisfy the exhaustion requirement the petitioner must present every claim raised in the federal petition to each level of the state courts. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The petitioner must afford each level of the state courts a fair opportunity to address the claim. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). The petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are "substantially equivalent" to those asserted in federal court. *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.1989). The state courts need not discuss or base their decisions upon the presented claims for those claims to be considered exhausted. *Picard*, 404 U.S. at 275, 92 S.Ct. at 512.

The district court, adopting the findings of the magistrate judge, concluded that "Doctor's 6th Amendment claim was never presented to any Pennsylvania appellate court." Appendix at 301.

■ In his § 2254 petition Doctor asserts the following grounds for relief:

---

1. An additional count of receiving stolen property was subsequently dismissed.

No record of trial of Absentia said to have been held on Aug. 29th 1986—I was not convicted in a court of law—I was never told on record or otherwise I was found guilty—I was never given any appeal rights before or after sentencing. No attorney is on record to have represented me in the mysterious absentia trial held—the trial transcripts in my case stop on page 129 at which time case was continued generally, this was on June 25, 1986. The court docket shows a conviction date of 8/29/86—written in on April 14, 1992—The trial court Judge has written an opinion on Oct. 2, 1992 and cited cases (*Com. v. Jones*) 1992 and *Com. v. Lines,* 609 A.2d 134 Pa. Super 1992. These cases do not apply to me—but are only stated to keep another court from reviewing the record and transcript both which will reveal there was no trial of absentia on Aug. 29th, 1986—my Rights to appeal is and has been obstructed by lower Court's false opinion and misconduct.

(Grounds)

1. Due Process 14th Amendment
2. Right to Appeal
3. Post Verdict Rights
4. 6th Amendment
5. Insufficient Evidence.

Appendix at 144–45.

On appeal Doctor states that his § 2254 petition includes a Sixth Amendment claim alleging a deprivation of his right to trial.[2] *See* Appellant's Reply Brief at 3 ("By depriving Doctor of a trial, of course the Trial Court also deprived Doctor of all other Sixth Amendment rights, ... But the critical violation, from which all other violations arose, was the deprivation of a trial."). Doctor claims that the trial court entered a guilty verdict against him without conducting any further proceedings *in absentia* or otherwise. We must decide whether Doctor has satisfied the exhaustion requirement by affording all levels of the Pennsylvania courts a fair opportunity to address this claim. Because we find that he has not adequately presented this claim to either the Pennsylvania Superi-

or Court or the Pennsylvania Supreme Court, we conclude that he has not.

Doctor's brief to the Superior Court on direct appeal did not include the Sixth Amendment claim he now asserts. In that brief Doctor raised four issues:

(1) whether the Defendant became a fugitive before post-trial proceedings commenced thereby waiving his rights to proceed on appeal; (2) whether mailing notice to Doctor's address is sufficient notice to satisfy constitutionally required due process whenever an individual may suffer a deprivation of his liberty; (3) whether the trial court's failure to advise Defendant of his Rule 1123 rights, which results in defendant's failure to file Post–Verdict Motions, constitutes a waiver by Defendant of appealable issue; and (4) sufficiency of the evidence.

*See* Appendix at 172–73. The due process claim raised in the Superior Court brief challenges only whether Doctor received constitutionally required notice of a trial *in absentia.* The brief does not raise the issue of whether a trial *in absentia* ever occurred. *See* Appendix at 183–84. Though inadequate notice of a trial may implicate Sixth Amendment concerns, a claim arising from that lack of notice is distinct from a claim that no trial *in absentia* was ever held. Following the Superior Court's May 13, 1993 order which quashed his right to appeal, Doctor filed an Application for Reargument in the Pennsylvania Superior Court. Appendix at 202–05. In this application Doctor, through counsel, stated:

the Trial Court's decision to continue Appellant's trial allows that Court to render a verdict *in absentia,* absent proof that Appellant received notice of the new trial date and then failed to appear. This Court's decision permits the prosecution and determination of guilt of an individual *in absentia* without notice of any proceedings. The same is a gross violation of the due process required by both the United States and Pennsylvania Constitutions.

*Id.* at 203–04. Doctor argues that this claim, without explicitly invoking the Sixth Amendment, incorporates it by reference to 14th

---

**2.** The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused

shall enjoy the right to a speedy and public trial...."

Amendment due process. Even if this were so, mere invocation of a legal principle is insufficient to apprise the state courts of the facts and legal theories of the claim he now asserts. We therefore cannot find that a claim concerning the adequacy of notice of a trial *in absentia* is "substantially equivalent" to a claim that no trial *in absentia* ever occurred as is necessary to satisfy the exhaustion requirement. *See Bond,* 864 F.2d at 309. Thus, the Superior Court did not have a fair opportunity to address Doctor's Sixth Amendment claim that the trial court never conducted a trial *in absentia.*

█ Nor did Doctor state the instant Sixth Amendment claim in his brief to the Pennsylvania Supreme Court. In that brief Doctor framed the issues as follows:

(1) whether the Superior Court's decision to quash Doctor's appeal is contrary to the United States Supreme Court's 1993 decision in *Ortega–Rodriguez v. United States;* (2) whether the Superior Court's decision to quash Doctor's appeal is contrary to *Commonwealth v. Harrison,* [289 Pa.Super. 126] 432 A.2d 1083 (Pa.Super.1981); (3) whether the Trial Court's reliance on Pa.R.A.P.1972(6) is in error, and in violation of both the United States and Pennsylvania Constitutions; and (4) whether prosecution *in absentia* without notice of proceeding is a gross violation of an individual's Constitutional right to due process.

*See* Appendix at 221. This brief did not assert that a trial *in absentia* was never held.

Doctor argues, however, that he presented his Sixth Amendment claim to the Pennsylvania Supreme Court in a separate, *pro se* petition brought pursuant to 42 Pa.C.S. § 721 [3] and filed on June 24, 1992. In that petition, Doctor asserts "Defendant ... was convicted in Pittsburgh, Penna. was denied due-process, under 5th and 14th Amendment under United States Constitution and Article 1 section 9 of Pa. Constitution." Appendix at 280. He further asserts "[d]efendant again is denied due process under 5th and 14th Amendment of U.S. Constitution, and Under Article 1 section 9 of the Pa. Constitution; by

being sentenced without an official verdict of guilt." *Id.* at 281. Doctor does not allege in this petition that a verdict was entered without the trial court ever conducting a trial *in absentia.* Though this challenge to the validity of the verdict does touch upon Doctor's challenge to the deprivation of his right to a trial, it falls short of raising the legal theory and facts supporting the Sixth Amendment claim he now asserts. Thus Doctor has not afforded the Pennsylvania Supreme Court a fair opportunity to address his claim. *See Bond,* 864 F.2d at 309.

█ Moreover, Doctor filed his original petition for a writ of habeas corpus before he filed his appeal to the Superior Court. The Pennsylvania Supreme Court denied his habeas corpus petition *per curiam* and without opinion: (1) while his direct appeal to the Superior Court was still pending; and (2) over a year before Doctor filed his Petition for Allowance of Appeal to the Pennsylvania Supreme Court. Under Pennsylvania law habeas corpus relief is not available "if a remedy may be had by post-conviction hearing proceedings authorized by law," 42 Pa. C.S. § 6503(b), and "may be invoked only when remedies in the ordinary course have been exhausted or are not available; the writ is *not* a substitute for appellate review." *Commonwealth v. Wolfe,* 413 Pa.Super. 583, 605 A.2d 1271, 1273 , *appeal denied,* 531 Pa. 646, 612 A.2d 985 (1992) (citations omitted); *see also Commonwealth v. McNeil,* 445 Pa.Super. 526, 665 A.2d 1247, 1250 (1995) (same).

Under these circumstances, even if his petition for a writ of habeas corpus to the Pennsylvania Supreme Court included the Sixth Amendment claim now asserted, his claims were untimely and the exhaustion requirement would arguably not be satisfied. *See Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975) (exhaustion requirement is not satisfied where denial of extraordinary writ cannot be fairly read as an adjudication on the merits of the claims and appellate review is available); *Ex Parte Hawk,* 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944).

---

**3.** Section 721 affords the Pennsylvania Supreme Court original jurisdiction over habeas corpus claims.

Doctor's attempts to present to the Pennsylvania appellate courts his claim that the trial court never conducted a trial *in absentia* does not "represent substantial compliance with the ... exhaustion requirement." *Bond,* 864 F.2d at 309. Therefore, Doctor must exhaust his state remedies before he can seek federal habeas relief unless such an attempt would be futile. *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993).

### FUTILITY

Doctor argues that even if he has not effectively exhausted his Sixth Amendment claim requiring him to return to state court would be futile because the Pennsylvania courts, having already determined that he waived his right to a direct appeal, will not address a petition under the PCRA.

Though in general a § 2254 petition which includes any unexhausted claims must be dismissed for failure to exhaust all state remedies, *Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379, this requirement does not apply when the unexhausted claims are procedurally barred. In such a case, although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims. *Toulson,* 987 F.2d at 987 (citations omitted); *Clark v. Commonwealth,* 892 F.2d 1142, 1147 n. 6 (3d Cir.1989). In such instances compliance is excused because any further attempts to assert the claims would be futile.

A petitioner's failure to exhaust state remedies is, however, excused only when state law "clearly foreclose[s] state court review of [the] unexhausted claims." *Toulson,* 987 F.2d at 987. If the federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies even if it is unlikely that the state court would consider the merits to ensure that, in the interests of comity and federalism, state courts are given every opportunity to address claims arising from state proceedings. *See Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986); *Toulson,* 987 F.2d at 987. In the instant case, all avenues of direct appeal are clearly foreclosed. Therefore, we must determine whether state collateral review is "clearly foreclosed," as to render further state proceedings futile.

Collateral review of a criminal conviction is available in Pennsylvania under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 (Supp.1996). To be eligible for relief under the PCRA, a petitioner must demonstrate that the claim has not been waived. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." *Id.* at § 9544(b). As the Pennsylvania courts have noted, "nearly all claims are waived under the PCRA since nearly all claims potentially could have been raised on direct appeal. This applies even if the first-time petitioner never has obtained appellate review." *Commonwealth v. Eaddy,* 419 Pa.Super. 48, 614 A.2d 1203, 1207–08 (1992), *appeal denied,* 534 Pa. 636, 626 A.2d 1155 (1993); *accord Commonwealth v. Stark,* 442 Pa.Super. 127, 658 A.2d 816, 820 (1995). Thus it appears that on collateral review the Pennsylvania courts would hold that Doctor waived the right to assert his Sixth Amendment claim on at least one of two separate grounds: (1) because his submissions to the Superior Court and/or the Pennsylvania Supreme Court failed to raise that claim; and (2) because under the fugitive forfeiture rule he waived all rights to have his claims considered.[4] However, we find that PCRA review

---

4. We find that the Pennsylvania courts would hold Doctor's claims waived under the fugitive forfeiture rule notwithstanding intervening changes in that rule.

During the pendency of Doctor's direct appeals Pennsylvania appellate courts had "no discretion to consider an appeal by a convicted defendant who escapes or absconds from the jurisdiction, regardless of when he returns." *Commonwealth v. Jones,* 388 Pa.Super. 22, 564 A.2d 983 (1989);

*Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439, 441 (1992) ("A defendant's voluntary escape acts as a per se forfeiture of his right of appeal.... Such a forfeiture is irrevocable and continues despite the defendant's capture or voluntary return to custody. Thus, by choosing to flee from justice, appellant forever forfeited his right to appeal.").

In 1995, after Doctor's direct appeals were concluded, the Pennsylvania Supreme Court

is not clearly foreclosed because Doctor may be able to demonstrate a "miscarriage of justice" warranting "departure from the PCRA's stringent eligibility requirements." *See Commonwealth v. Fiore*, 445 Pa.Super. 401, 665 A.2d 1185, 1193 (1995) (Hoffman, J., concurring) (citations omitted), *appeal denied*, 544 Pa. 623, 675 A.2d 1243 (1996).

■■■■ There are limited exceptions allowing assertion of a claim that would be considered waived. In *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107, 112 (1988), the Pennsylvania Supreme Court held that issues never raised on direct appeal or in previous postconviction petitions are deemed waived, precluding their consideration in successive postconviction petitions, unless the petitioner can demonstrate a "miscarriage of justice, which no civilized society can tolerate."[5] Petitioner must demonstrate: (1) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate; or (2) actual innocence. *Commonwealth v. Szuchon*, 534 Pa. 483, 633 A.2d 1098, 1100 (1993). A miscarriage of justice "can only occur where it is demonstrated that a particular omission or commission was so serious that it undermined the reliability of the outcome of the proceeding. Where a conviction can be shown to result from a breakdown in the adversary process, the conviction rendered is unreliable. Such a conviction is obviously prejudicial to the defendant and, if allowed to stand, is a miscarriage of justice." *Lawson*, 549 A.2d at 112 (Papadakos, J., concurring).[6]

Doctor alleges facts that could support a finding that "the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate." *Szuchon*, 633 A.2d at 1100. Doctor's allegations and citations to evidence in the record indicate that a judge entered a verdict against him without convening any proceedings in open court and without any semblance of resuming adversary proceedings. These contentions could be construed as giving rise to a claim of a serious breakdown in the adversary process. Such allega-

overruled *Jones* and held that appellate courts retained discretion to reinstate appellate rights of an escaped defendant. *In re J.J.*, 540 Pa. 274, 656 A.2d 1355, 1362–63 (1995) (citing *Ortega–Rodriguez v. United States*, 507 U.S. 234, 244, 113 S.Ct. 1199, 1205–06, 122 L.Ed.2d 581 (1993) and holding that sanction must be reasonable response to flight and is warranted only if there is some connection between flight and the appellate process). In *Commonwealth v. Huff*, 540 Pa. 535, 658 A.2d 1340 (1995), the Pennsylvania Supreme Court held that the Superior Court had erred by denying appellate rights where the appellant's flight from justice prior to sentencing had no significant effect on the appellate process. *Id.*, 658 A.2d at 1342.

If *Huff* and *In re J.J.* were applied retroactively on collateral review the Pennsylvania courts might determine that Doctor did not waive the right to have his claims considered because: (1) he escaped before filing a notice of appeal and was sentenced only after his recapture; and/or (2) his escape did not materially affect the appeals process in which case, *Huff* and *In re J.J.* would require that his right to appeal be reinstated. However, Pennsylvania law is clear that "a new rule of law to which we give full retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal." *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180, 1183 (1986). Therefore, even assuming that the Pennsylvania courts would give full retroactive effect to the rules announced in *In re J.J.* and *Huff*, those rules would not be applied on collateral review of Doctor's claims because those decisions were not handed down during the pendency of his direct appeals. The non-discretionary fugitive forfeiture rule that governed before *In re J.J.* would thus deem Doctor's claims waived.

5. *Lawson* addressed the waiver issue in the context of a petition brought pursuant to the Post Conviction Hearing Act, predecessor to the Post Conviction Relief Act. However, the holding in *Lawson* also applies to petitions brought under the PCRA. *See Commonwealth v. Szuchon*, 534 Pa. 483, 633 A.2d 1098, 1099 (1993).

6. Pennsylvania courts have not addressed whether a showing of miscarriage of justice can overcome the waiver provisions of the PCRA for initial petitions. They have, however, permitted allegations of miscarriage of justice to override the waiver provisions of the PCRA and have therefore reached the merits of such claims in successive PCRA petitions. *See, e.g., Commonwealth v. Williams*, 442 Pa.Super. 590, 660 A.2d 614, 618–19 (1995), *appeal denied*, 674 A.2d 1071 (Pa.1996). Though the precise relationship between a miscarriage of justice allegation and the PCRA's waiver provisions is somewhat unsettled, *see, e.g., Commonwealth v. Ryan*, 394 Pa.Super. 373, 575 A.2d 949, 950–51 (1990) (applying waiver provisions where petitioner had alleged miscarriage of justice), we cannot conclude that collateral review is clearly foreclosed because these cases leave open the possibility that a showing of miscarriage of justice can overcome the waiver provisions in an initial PCRA petition.

tions, if true, raise concerns much more serious than defects in a trial that do not entirely negate the existence or appearance of a public trial as required by the Sixth Amendment. *Cf. Lawson,* 549 A.2d at 110 (allegation that trial did not timely commence does not demonstrate a miscarriage of justice); *Commonwealth v. Williams,* 442 Pa.Super. 590, 660 A.2d 614, 618 (allegation that petitioner was not informed of the elements of the crimes to which he pled nolo contendere, that his speedy trial rights were violated, and that the sentence imposed exceeded the guidelines and abused discretion did not indicate a miscarriage of justice).

■ The exhaustion requirement reflects concerns of comity and federalism which require this Court to give state courts first opportunity to "consider allegations of legal error without interference from the federal judiciary." *Hillery,* 474 U.S. at 257, 106 S.Ct. at 620. Although exhaustion may be excused where return to the state courts would be futile, we must be certain that state review is clearly foreclosed lest we deprive state courts of an "opportunity to correct their own errors, if any." *Toulson,* 987 F.2d at 989 (citation omitted). It is therefore not for this Court to decide whether the Pennsylvania courts will conclude that the defects in the proceedings surrounding Doctor's conviction rise to the level of a miscarriage of justice as defined by Pennsylvania law. We cannot conclude that there is no chance that the Pennsylvania courts would find a miscarriage of justice sufficient to override the waiver requirements and permit review under the PCRA. Accordingly, we conclude that a return to state court would not be futile.

### PROCEDURAL DEFAULT

■ Though the foregoing analysis mandates dismissal of Doctor's petition and thus affirmance of the court below, Doctor may resubmit a petition asserting only his exhausted claims. *Lundy,* 455 U.S. at 520, 102 S.Ct. at 1204. Should this occur the district court will again be faced with the question of

whether Doctor is entitled to federal habeas review of his procedurally defaulted claims. Therefore, in the interests of judicial economy we will address the district court's holding that the fugitive forfeiture rule bars federal habeas review of Doctor's claims. A petitioner is entitled to federal review of procedurally defaulted claims only if he can demonstrate that (1) the procedural rule was not "independent" and "adequate" or (2) cause for his failure to comply with state procedural rules and prejudice resulting therefrom. *See Harris v. Reed,* 489 U.S. 255, 260–61, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989); *Reynolds v. Ellingsworth,* 843 F.2d 712, 717 (3d Cir.), *cert. denied,* 488 U.S. 960, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988).

On direct appeal, the Pennsylvania courts found that under the fugitive forfeiture rule Doctor had waived his appellate rights. They therefore did not reach the merits of his claims. Federal courts, as a matter of comity and federalism, will not address habeas claims which have been defaulted in state court because the petitioner violated an "independent" and "adequate" state procedural rule, unless the petitioner can demonstrate cause and prejudice. *Harris,* 489 U.S. at 260–61, 109 S.Ct. at 1042; *Reynolds,* 843 F.2d at 717. Thus, Doctor's claims may be considered only if he can demonstrate: (1) that as applied to him, the fugitive forfeiture rule was not an independent and adequate state procedural rule; or (2) cause for the procedural default and prejudice resulting therefrom. We hold that the fugitive waiver rule as applied in this case was not an independent and adequate state procedural rule and therefore we do not consider whether Doctor can demonstrate cause and prejudice.[7]

■ A state rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state

---

7. As discussed below the instant case raises an issue beyond the settled bounds of the fugitive forfeiture rule. Therefore even if *Feigley v. Fulcomer,* 833 F.2d 29 (3d Cir.1987), by reaching the issue of cause and prejudice, implicitly held

that the fugitive forfeiture rule was independent and adequate in that case, *see id.* at 32, it does not resolve whether the rule is independent and adequate as applied in this case.

courts' refusal in this instance is consistent with other decisions. *Neely v. Zimmerman,* 858 F.2d 144, 148 (3d Cir.1988) (citing *Wainwright v. Sykes,* 433 U.S. 72, 85–86, 97 S.Ct. 2497, 2505–06, 53 L.Ed.2d 594 (1977)). A state rule is adequate only if it is "consistently and regularly applied." *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *see also Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991) (state procedural rule must be "firmly established and regularly followed" to bar federal habeas review). While the state rule should be applied "evenhandedly to all similar claims," *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982), state courts only need demonstrate that in the "vast majority of cases," the rule is applied in a "consistent and regular" manner. *Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989).

■ The parties do not dispute that the state appellate courts refused to review petitioner's claims on the merits. We therefore examine whether the state procedural rule on which they relied to foreclose review of the merits speaks in unmistakable terms or is "firmly established and regularly followed."

The Superior Court refused to consider the merits of Doctor's claims because by "choosing to flee from justice for approximately six years, Doctor forever forfeited his right to appeal." *See* Memorandum filed May 13, 1993 Appendix 198–200. The court based its decision on: *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439 (1992); *Commonwealth v. Craddock,* 522 Pa. 491, 564 A.2d 151 (1989); *Commonwealth v. Lines,* 415 Pa.Super. 438, 609 A.2d 832, *allocatur denied,* 532 Pa. 662, 616 A.2d 983 (1992); and Pa.R.App.P.1972(6). The language of the Superior Court opinion

and its reliance on *Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439 (1992), indicate that the Court believed it lacked the discretion to consider the appeal of a defendant who had fled at any time.

■ The applicable procedural rule, Pa. R.App.P.1972(6), which provides in relevant part that "any party may move: ... (6)[t]o continue generally or to quash because the appellant is a fugitive," on its face speaks only to situations where the appellant is presently a fugitive and provides no guidance as to appeals filed after the petitioner has been returned to custody. *See Clark,* 892 F.2d at 1149 (the rule "provides little or no guidance as to dismissal of claims arising after recapture"). Therefore we must examine the case law to determine whether the rule relied upon by the Superior Court—that it lacked the discretion to consider an appeal filed by a defendant who had fled at any time—was "firmly established and regularly applied." *Ford,* 498 U.S. at 423–24, 111 S.Ct. at 857–58. We must decide whether the rule was firmly established and regularly applied, not in 1993 when the Superior Court relied on it, but rather as of the date of the waiver that allegedly occurred when Doctor escaped in 1986.[8] *See Reynolds,* 843 F.2d at 722 (federal courts should generally determine questions of procedural default according to the habeas waiver law in effect at the time of the asserted waiver) (citing *Spencer v. Kemp,* 781 F.2d 1458, 1469 (11th Cir.1986) (en banc) and *Lumpkin v. Ricketts,* 551 F.2d 680, 682 & n. 2 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977)); *see also NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169–70, 2 L.Ed.2d 1488 (1958) ("Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights.").

---

**8.** We stated above that during the pendency of Doctor's direct appeals Pennsylvania appellate courts lacked the discretion to consider the appeal of a convicted defendant who escapes or absconds from the jurisdiction regardless of when he returns. *See supra* note 4 (citing *Commonwealth v. Jones,* 388 Pa.Super. 22, 564 A.2d 983 (1989) and *Commonwealth v. Jones,* 530 Pa. 536, 610 A.2d 439, 441 (1992)). The present inquiry is distinct because it focuses on the state of the fugitive forfeiture rule when Doctor fled in 1986 rather than on the period of 1992 to 1993 when Doctor was returned to custody and his appeals to the Pennsylvania appellate courts were pending.

To determine the state of the law in 1986 we examine the Pennsylvania Supreme Court's opinions in *Commonwealth v. Galloway,* 460 Pa. 309, 333 A.2d 741 (1975) and *Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984). In *Galloway,* the defendant escaped from custody during the pendency of his direct appeal to the Pennsylvania Supreme Court. The district attorney petitioned to dismiss the appeal with prejudice. The Pennsylvania Supreme Court did not decide the petition and continued the argument generally until Galloway was returned to custody. After he was returned to custody, the Pennsylvania Supreme Court denied the petition to dismiss the appeal. The *Galloway* Court explained that the rationale behind dismissing an appeal while a convicted defendant is a fugitive rests upon "the inherent discretion of any court to refuse to hear the claim of a litigant who, by escaping, has placed himself beyond the jurisdiction and control of the court, and hence, might not be responsive to the judgment of the court." *Galloway,* 333 A.2d at 743. The court held that there was no basis to dismiss the defendant's appeal because he was in custody when the case was actually argued and would therefore be subject to the jurisdiction of the court and thus responsive to any judgment entered.

After *Galloway,* Pennsylvania's intermediate courts consistently recognized their discretion to hear a properly filed appeal as long as the criminal defendant had returned to the jurisdiction before the appeal was dismissed. *See Commonwealth v. Jones,* 388 Pa.Super. 22, 564 A.2d 983, 985 (1989) (citations omitted); *see also Commonwealth v. Milligan,* 307 Pa.Super. 129, 452 A.2d 1072 (1982); *Commonwealth v. Harrison,* 289 Pa.Super. 126, 432 A.2d 1083 (1981); *Commonwealth v. Albert,* 260 Pa.Super. 20, 393 A.2d 991 (1978); *Commonwealth v. Borden,* 256 Pa.Super. 125, 389 A.2d 633 (1978); *Commonwealth v. Boyd,* 244 Pa.Super. 98, 366 A.2d 934 (1976); *Commonwealth v. Barron,* 237 Pa.Super. 369, 352 A.2d 84 (1975).

In *Passaro,* the defendant escaped from custody while his direct appeal to the Superior Court was pending. The Superior Court granted the Commonwealth's motion to quash the appeal. When the defendant was returned to Pennsylvania he filed a petition to reinstate his appeal which both the Superior Court and the Supreme Court denied.

While recognizing the *Galloway* rationale for dismissing an escaped defendant's pending appeal, the Supreme Court stated in decidedly non-discretionary language:

> The escape of a convicted defendant from confinement may properly be considered a rejection of the legitimate means afforded the defendant for challenging his conviction and imprisonment. Thus, by choosing to flee and live as a fugitive, a defendant forfeits the right to have his claim considered.

*Passaro,* 476 A.2d at 349.

*Passaro,* however, did not overrule *Galloway.* We therefore do not read *Passaro* to eliminate the discretion conferred in *Galloway.* Rather, we read the absence of any discretionary language in *Passaro* to reflect the important distinction between the two cases: the status of the appeal upon recapture. Thus, *Passaro,* while leaving undisturbed *Galloway's* grant of discretion as to whether dismiss a pending appeal, declined to confer the same discretion as to whether to reinstate a previously dismissed appeal. Therefore, Pennsylvania's fugitive forfeiture rule after *Passaro* can described as follows: if the defendant is returned to custody while his appeal is pending, an appellate court has the discretion to hear the appeal, but if the defendant is returned to custody after the appeal is dismissed an appellate court lacks the discretion to reinstate and hear the appeal. *See Jones,* 564 A.2d at 986 ("the factual distinctions between *Galloway* and *Passaro* would still suggest that the forfeiture analysis of *Passaro* would not apply to situations ... where the defendant was returned to Pennsylvania authorities while their appeals were still pending").

It is clear from these decisions, which reflect the state of the law at the time of petitioner's escape, that Pennsylvania law afforded appellate courts different degrees of discretion depending on the posture of the appeal upon a former fugitive's return to custody. Pennsylvania law had never confronted the situation that arises in the instant case where petitioner's flight had ended and custody had been restored before the

appellate process was ever initiated. Thus, it was not "firmly established" that Pennsylvania courts lacked the discretion to hear an appeal first filed after custody had been restored. Under the *Galloway* rationale a court would have the discretion to hear an appeal filed by such a defendant because the defendant would be in custody during the entire pendency of his appeal and subject to the enforcement of any order entered as a result thereof. Furthermore, as the Superior Court noted in *Jones,* 564 A.2d at 985–86, it was unclear, until the Pennsylvania Supreme Court's decision in *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1988), whether the *Passaro* forfeiture analysis even applied to a defendant who escaped and returned to custody during the pendency of his appeal. Therefore, the state courts in this case did not rely on an "adequate" procedural rule to deny petitioner a review of his appeal on the merits.

For the foregoing reasons, the judgment of the district court will be affirmed.

SCIRICA, Circuit Judge, concurring.

I agree that Doctor has failed to exhaust his state created remedies and that we should affirm the judgment of the district court dismissing Doctor's petition. But I write separately because I believe the Pennsylvania state courts should be given the opportunity to decide whether the recent changes in the fugitive forfeiture rule should be applied retroactively to Doctor. I recognize that Pennsylvania courts have held that a new rule of law to which courts give retroactive effect, will not be applied on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal. *Commonwealth v. Gillespie,* 512 Pa. 349, 516 A.2d 1180, 1183 (1986). But in light of the drastic change in Pennsylvania's law regarding appeals by escapees, it is possible the state courts may relax the retroactivity rule in a case like this one. Only when state law "clearly foreclose[s] state court review of [the] unexhausted claims," is a petitioner's failure to exhaust excused. *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993). If a federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies rather than hold the

claims barred, even if it is unlikely that the state court would consider them. *Id.* at 988. This is premised on firmly entrenched principles of comity. Accordingly, I do not think it would be futile to require Doctor to return to state court.

In addition, since Doctor has not yet filed a petition asserting only exhausted claims, I do not think it is necessary to reach the procedural default issue. But in the event that Doctor resubmits his exhausted claims, it would appear that under *Feigley v. Fulcomer,* 833 F.2d 29 (3d Cir.1987), the fugitive forfeiture rule would bar federal habeas review of Doctor's claims. As the court notes, a petitioner is not entitled to federal review of procedurally defaulted claims if the state-law ground is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Waiver of claims in state court can be overlooked by federal courts only if the petitioner can demonstrate "cause" for non-compliance with the procedural rule and "prejudice" resulting from the alleged constitutional violation, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* As noted, in *Feigley* we did not explicitly address whether Pennsylvania's fugitive forfeiture rule is an "independent and adequate" state procedural rule mandating default judgment against the escapee. But we could not have reached the issue of "cause and prejudice" without first implicitly determining the rule was an independent and adequate basis for the court's decision. Consequently, it would appear the fugitive forfeiture rule would bar review of Doctor's exhausted claims.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and McKEE, Circuit Judges, and O'NEILL*, District Judge.

SUR PETITION FOR REHEARING

Nov. 4, 1996

The petition for rehearing filed by appellant in the above-entitled case having been

---

* The Honorable Thomas N. O'Neill, Jr., United States District Judge for the Eastern District of Pennsylvania, who sat by designation, as to panel rehearing only.

submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court in banc, is denied.