Otis PETERKIN

v.

Martin HORN, et. al.

No. CIV.A. 95–CV–3989.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 1998.

Billy H. Nolas, Center of Legal Education, Advocacy & Defense Assistance, Philadelphia, PA, for Plaintiff.

Donna G. Zucker, Philadelphia District Attorneys, Office—Federal Litigation, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

In September, 1982, Otis Peterkin was convicted of robbery, possession of an instrument of crime and two counts of first degree murder in the Court of Common Pleas of Philadelphia County and sentenced to death. Following the denial of his direct appeal and a petition under the Pennsylvania Post Conviction Relief Act by both the Philadelphia County Court of Common Pleas and the Pennsylvania Supreme Court, Mr. Peterkin filed this petition for writ of habeas corpus seeking to have his convictions and sentence vacated. As discussed below, we find that the petition must be dismissed without prejudice.

### History of the Case

This case arose on November 29, 1981 when the Sunoco Service Station located at Broad and Catherine Streets in South Philadelphia was robbed and two service station employees were murdered. On December 2, 1981, Petitioner turned himself in to the police after learning that a warrant was out for his arrest for these crimes. Petitioner was thereafter tried and, on September 25, 1982, was found guilty of two counts of first degree murder for the shooting deaths of Sunoco station manager John Smith and attendant Ronald Presbury, as well as one count each of robbery and possession of an instrument of crime. Following the denial of his post-trial motions, Petitioner was sentenced to death on the murder convictions and 10 to 20 and 2½ to 5 years' imprisonment on the robbery and possession of instrument of crime convictions, respectively, to run consecutively.

Thereafter, Mr. Peterkin appealed his convictions and sentences to the Pennsylvania Supreme Court, making the following arguments on direct appeal:

1. That the Pennsylvania Death Penalty Statute is unconstitutional because it creates a conclusive presumption favoring death.

2. That he received ineffective assistance from his trial counsel in that counsel failed to investigate, research and apply the law, failed to interview witnesses, failed to object to the exclusion of those potential jurors who expressed opposition to the death penalty and to the death qualification of the jury; failed to raise constitutional challenges to the death penalty and failed to present evidence of mitigating circumstances and factors.

3. That the trial court erred in allowing the admission of irrelevant and hearsay testimony from, *inter alia*, Stanley Trader, Maurice Rogers, Diana Dunning and Clarence Sears and in denying petitioner standing to challenge the search of Sherry Diggins' apartment.

4. That trial counsel was further ineffective in: introducing himself to the jury as petitioner's "court-appointed" counsel; delivering a closing argument to the jury that was not based on the evidence presented; failing to prepare for sentencing and failing to present mitigation evidence at the penalty stage of the trial.

5. That a proportionality review reflects that the sentence of death was inappropriate and disproportionate in his case.

With the exception of finding that the hearsay statements made by Ronald Presbury to Stanley Trader and Clarence Sears were improperly admitted but were nonetheless harmless error, the Pennsylvania Supreme Court rejected petitioner's assignments of error and upheld his convictions and sentences. *See: Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986). Mr. Peterkin appealed to the U.S. Supreme Court, which denied certioari in 1987.

Petitioner then sought relief *pro se* under the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et. seq.* Counsel was appointed for him, but after reviewing the issues which Mr. Peterkin sought to raise, concluded that they either lacked merit or had been litigated earlier. Appointed counsel therefore filed a "no-merit" letter and requested permission to withdraw his appearance. The trial court granted counsel leave to withdraw and denied the PCRA petition without a hearing. Mr. Peterkin then appealed *pro se* to the Pennsylania Superior Court which transferred the appeal to the Pennsylania Supreme Court in accord with 42 Pa.C.S. § 9546(d). The Supreme Court remanded the case to the trial court to determine whether Mr. Peterkin was eligible for appointed counsel. Another attorney was subsequently appointed to represent the petitioner and the Pennsylvania Supreme Court then considered whether his convictions and sentences should be set aside on any of the following grounds:

1. He was denied his constitutional right to effective assistance of counsel where trial counsel failed to present character witnesses on his behalf at trial and where post-trial counsel failed to properly raise and argue this issue on direct appeal and in the court below on his PCRA petition.

2. He was denied his constitutional right to a fair trial and to due process of law where the prosecutor engaged in gross misconduct in his closing argument at trial and that both trial and post-trial counsel were ineffective in failing to raise and preserve this issue for appeal purposes.

3. The court failed to advise the jury that mitigating circumstances need not be found unanimously to be weighed and considered by individual jurors and prior counsel were ineffective in failing to raise and previously litigate this issue.

4. No sentence of death was imposed by the jury on either bill of information upon which he was found guilty of murder in the first degree, as both murder bills were submitted jointly to the jury for a single consideration and imposition of penalty.

5. Trial counsel failed to present available evidence in mitigation and an inadequate closing argument at sentencing thereby depriving him of his constitutional right to effective representation and post-trial counsel were ineffective in failing to properly raise this issue on direct appeal and to the court below on his PCRA petition.

6. He was denied his constitutional right to a fair trial and to due process of law as a result of prosecutorial misconduct in the sentencing argument and trial and post-trial counsel were ineffective in failing to object and preserve this error on direct appeal or in the court below on PCRA petition.

The Supreme Court found that the prosecutor may have committed error in requesting the jury to be as cold and ruthless as Petitioner had been when he murdered the victims and in telling the jury that the "best witnesses," i.e., the victims, "are not here," but if they were, he was "sure" that "they would tell you that it was not my choice to go this way, it was not my choice to go in that kind of pain." Nevertheless, the Supreme Court found that petitioner had failed to demonstrate that these remarks prejudiced the jury or that if they did, this error was also harmless given the overwhelming evidence of Petitioner's guilt. Accordingly, the trial court's denial of Petitioner's PCRA petition was affirmed.

By way of the petition for writ of habeas corpus which is now before this Court, Mr. Peterkin continues to seek to have his convictions and sentences overturned. In addition to reiterating the claims which he raised on direct appeal and in his PCRA petition, how-

ever, Mr. Peterkin now also asserts the following grounds [1] for the relief sought:

1. That the Commonwealth improperly withheld exculpatory evidence and presented inaccurate, misleading and false evidence and argument to the jury (with regard to the testimony of Sherry Diggins and Officers McCabe and Kane, to the statements of Arlene Foster, to fingerprint evidence and the results of the polygraph examination given to Stanley Trader).

2. That trial counsel was ineffective at the pre-trial stage in:

—failing to conduct proper discovery;

—failing to investigate the crime scene;

—failing to review fingerprint and ballistic evidence;

—failing to consult and retain forensic experts;

—failing to investigate the background and potential involvement of Stanley Trader;

—failing to investigate the background and potential involvement of Leroy Little;

—failing to investigate previous crimes and incidents at the Sunoco Service Station at Broad and Catherine Streets;

—failing to request a bill of particulars;

—failing to request or move for disclosure from the prosecution;

—failing to provide notice of an alibi defense; and

—failing to challenge the affidavits in support of the warrants pursuant to *Franks v. Delaware*.

3. That trial counsel was ineffective at the trial stage in:

—failing to make an effective opening statement;

—failing to humanize petitioner;

—failing to even suggest the remote possibility to the jury that petitioner was innocent;

—failing to cross-examine prosecution witnesses Stanley Trader, Clarence Sears, Sherry Diggins, Alex Charyton, Detective Kane, Officer McCabe, Assistant Medical Examiner Paul Hoyer and Ballistics expert William Fort;

—failing to effectively cross-examine the prosecution witnesses that were cross-examined;

—failing to present a single witness for the defense, including alibi witnesses; and

—failing to present an effective closing argument.

4. That numerous instances of prosecutorial misconduct occurred entitling him to relief from his convictions, including:

—despite the fact that he had no prior criminal record, the prosecutor erred in producing three witnesses who testified that petitioner received public assistance payments at a vacant lot address, that he was registered to vote under two different names (Otis Loach and Otis Peterkin), and that he owned two firearms, neither of which were used in the crimes at issue;

—the prosecutor improperly vouched for the strength and veracity of the Commonwealth's witnesses and case;

—the prosecutor improperly urged the jury in his closing argument to "[r]eturn to the values of yesteryear";

—the prosecutor improperly used the hearsay testimony of Stanley Trader and Maurice Rogers as substantive evidence in his closing argument.

5. That the trial court gave a defective instruction on "reasonable doubt."

6. That the evidence properly admitted was insufficient to convince any rational trier of fact that Petitioner was guilty of first degree murder beyond a reasonable doubt.

7. That he is innocent.

8. That there was insufficient evidence that Petitioner robbed John Smith. If anything, it was the Sunoco station that was robbed.

9. That the jury's declaration upon and issuance of a single death sentence for two

---

1. Integral to each of the claims now being raised is the underlying contention that trial and previous appellate counsel were ineffective in failing to previously raise each issue.

capital murder convictions was in violation of the 8th and 14th Amendments.

10. There were no aggravating factors since the only aggravating factor found, i.e., killing in perpetration of a felony was improper given that there was no evidence that Smith was killed in the course of himself being robbed.

11. The Commonwealth failed to provide adequate notice that it would seek the death penalty as such notice was not given until jury selection.

12. The trial court failed to properly instruct the jury on mitigating factors and how to balance them against the aggravating factors.

13. The trial court failed to explain to the jury that in Pennsylvania a life sentence means a life sentence with no possibility of parole.

14. That the trial court's penalty phase instructions were insufficient and were invalid in that they failed to describe and define the aggravating and mitigating circumstances involved in petitioner's case and how to weigh or balance the factors.

15. That the trial court's sentencing instructions and verdict form created a substantial probability that the jurors thought they would be precluded from considering mitigating matters upon which they were not unanimous.

It is therefore clear that Mr. Peterkin's petition for writ of habeas corpus contains some claims which have been reviewed and considered by the Pennsylvania state courts and some claims which have not been previously raised before any court.

### Discussion

It is well-settled that district courts have the authority to entertain applications for writ of habeas corpus on behalf of an individual in custody pursuant to a state court judgment only on the ground that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Subsection (b)(1) of that statute,

however, provides in relevant part that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State;..."

This is in essence a codification of the exhaustion doctrine, which is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.[2] *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) *citing Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490–491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). The exhaustion doctrine mandates that **all** claims on all legal theories must first be presented to each level of the state courts before a federal district court may consider a petition for writ of habeas corpus. *Doctor v. Walters,* 96 F.3d 675, 678 (3rd Cir.1996), *citing Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) and *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). *See Also: Landano v. Rafferty,* 897 F.2d 661, 669 (3rd Cir.1990).

A petitioner will not be deemed to have exhausted the available state court remedies so long as he has the right under state law to raise the question presented by any available procedure. A petitioner who has raised an issue on direct appeal is not required to raise it again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3rd Cir.1997); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3rd Cir.1992). If a question exists as to whether the petitioner has stated a colorable federal claim, the district court may not consider the merits of the claim if the petitioner has failed to exhaust state remedies and none of the exceptions set forth in sections 2254(b)(1)(B)(i) or (ii) applies. *Lambert,* 134 F.3d at 515. If

---

**2.** This is also an outgrowth of the legal principle of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers and already cognizant of the litigation have had an opportunity to pass upon the matter." *Rose v. Lundy,* 102 S.Ct. at 1201.

a habeas corpus petition is "mixed," i.e., contains both unexhausted and exhausted claims, it should be dismissed without prejudice. *Rose v. Lundy*, 455 U.S. at 522, 102 S.Ct. at 1205; *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3rd Cir.1986).

There are exceptions to this general rule, however. As 28 U.S.C. § 2254(b)(B)(i) and (ii) make clear, an application for a writ of habeas corpus may be granted if it appears that—

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

■ Additionally, exhaustion is not required where the unexhausted claims are procedurally barred. *Doctor v. Walters*, 96 F.3d at 681. This is because in such a case, although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits. *Id., citing Toulson v. Beyer*, 987 F.2d 984, 987 (1993). Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion because there are no state remedies any longer "available" to him. *Coleman v. Thompson*, 501 U.S. 722, 731–732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991).

■ The Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et. seq.* (PCRA) "[p]rovides for an action by which persons convicted of crimes that they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S. § 9542. Section 9543(a) of the Act provides in relevant part that "[t]o be eligible for relief..., a petitioner must plead and prove by a preponderance of the evidence, all of the following:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have

been the result of any rational, strategic or tactical decision by counsel."

An issue has been "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S. § 9544(a). "Waiver," in turn occurs with respect to an issue "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Finally Section 9545(b) of the PCRA prescribes the time within which a petition for relief under the Act must be filed:

(1) Any petition under this subchapter, including a second or subsequent petition shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

In view of all of the foregoing, it is clear that the PCRA constitutes an available state corrective process by which Mr. Peterkin could challenge (and in fact has previously challenged) his conviction and sentence. *See: Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121 (1994). However, while a plain reading of Sections 9543(a)(3), 9544, and 9545(b) of the PCRA strongly suggests that the Pennsylvania state trial and appellate courts will find Petitioner's new habeas claims to have been waived and/or procedurally barred, this presumed result is far from being conclusively established.

■ For one, a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). Furthermore, it appears to be the practice of the Pennsylvania Supreme Court to address all issues arising in a death penalty case, irrespective of waiver. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356, n. 6 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); *Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467, 470, n. 7 (1995), *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *Commonwealth v. DeHart*, 539 Pa. 5, 650 A.2d 38 (1994).

■ Finally, as several recent Third Circuit decisions evince, the mere appearance of procedural default is not a sufficient basis to justify a district court's consideration of non-exhausted claims on their merits. In *Christy v. Horn*, 115 F.3d 201 (3rd Cir.1997), the Court recognized "that in rare cases, exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim," that the "federal courts are to exercise discretion in each case" in deciding whether to entertain an unexhausted claim, and that "such (limited) circumstances exist when, for example, state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised, or where exhaustion in state court would be futile." *Christy*, at 206–207 *citing Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987).

Similarly, in *Lambert v. Blackwell, supra,* the Court was faced with the question of whether the petitioner's numerous ineffective assistance of counsel and other claims were foreclosed from state court review because they would necessarily be filed after the one-year limitations period of the PCRA and thus

whether exhaustion of petitioner's state remedies would be futile. Following its review of the caselaw interpreting the PHRA, the court determined that it was unclear after the 1995 amendments to the Act whether the Pennsylvania courts would allow a showing of miscarriage of justice to overcome the waiver provisions and thus it could not say with certainty that requiring petitioner to seek review of her claims in the state court would be futile. 134 F.3d at 522. The appeals court thus decreed that, "[i]f the federal court is uncertain how a state court would resolve a procedural default issue, it should dismiss the petition for failure to exhaust state remedies even if it is unlikely that the state court would consider the merits to ensure that, in the interests of comity and federalism, state courts are given every opportunity to address claims arising from state proceedings." *Id.*, at 519, *citing Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986) and *Toulson v. Beyer, supra*, 987 F.2d at 987.

In light of the preceding principles and as we observed in our December 15, 1998 Memorandum and Order disposing of the Respondents' Motion for Reconsideration of our earlier order granting petitioner leave to take limited discovery, this Court simply cannot definitively determine at this juncture whether the Pennsylvania state courts will consider the additional issues which Mr. Peterkin now seeks to raise in his habeas corpus petition or what rulings the Pennsylvania courts would issue with respect to Petitioner's additional claims. We therefore conclude that the appropriate course of action to take at this time, pursuant to the dictates of, *inter alia, Rose v. Lundy* and *Lambert v. Blackwell,* is the dismissal of Mr. Peterkin's petition for writ of habeas corpus without prejudice to his right to refile the petition following the presentation and disposition of his previously unlitigated and unexhausted claims by the Pennsylvania state courts.